DAVID ENSRUD, APPELLEE AND CROSS-APPELLANT, V. ALICIA ANN ENSRUD, APPELLANT AND CROSS-APPELLEE.

433 N.W.2d 192

Filed December 23, 1988.    No. 88-192.

Kenneth C. Fritzler, of Ross, Schroeder & Fritzler, for appellant.

Thomas W. Tye II, of Tye, Hopkins & Tye, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

On September 1, 1987, David Ensrud, 21 years of age, commenced an action to dissolve his marriage with Alicia Ann Ensrud, 20 years of age, and obtain custody of their child, Sara Marie, who was nearly 16 months old. David also requested that Alicia pay child support and that the court divide and distribute marital property. In her cross-petition, Alicia reciprocated, seeking custody of Sara Marie, child support, and a property division.

Although David and Alicia had been living in Gering, Scotts Bluff County, and were married there, the two moved to Kearney, where David attended college as a full-time student planning a career in business management. Contemporaneously, Alicia attended classes at a business college in Grand Island. Since David's residence was in Buffalo County, the dissolution action was maintained in the district court for that county.

At the time of trial on January 7, 1988, David was an unemployed student and expected to be graduated in May of 1988, but was uncertain about prospective employment. In the fall of 1987, Alicia received an associate degree in business administration and finance and moved to Rapid City, South Dakota, where, in Alicia's situation, better employment prospects existed. Alicia's sister also lived in Rapid City. Alicia went to work for a bank in Rapid City and, on the Monday after the trial, was supposed to enter new employment with a credit union at a pay rate of $5.17 per hour. According to Alicia, David was a "very good father" to Sara Marie. David voiced little complaint concerning Alicia's fitness as Sara Marie's mother.

Alana Anderson testified for David. Anderson, who had a bachelor's degree in speech pathology and some "graduate hours in psychology," had been an employee in the Child Protective Services of the Department of Social Services for the State of Nebraska and, for a little over a year before the trial, was working as the "Child Custody Officer for the Buffalo County District Court." As child custody officer, Anderson met

with parents involved in dissolution proceedings, who "are having problems with custody or visitation." After commencement of the Ensrud dissolution proceedings, Anderson, as the child custody officer, but without a directive order from the court, met about six times with David and Alicia on account of their disagreements regarding temporary custody of Sara Marie. Throughout their intermittent pretrial differences on the custody of Sara Marie, David and Alicia made some custody arrangements concerning Sara Marie, but, as Anderson recounted: "We continually had to make changes" with adoption of a new plan for temporary custody. Realizing that the distance between Rapid City and Kearney was between "400 and 500 miles," Anderson expressed her opinion that "shared custody" was in Sara Marie's best interest. To buttress her opinion, Anderson testified that Sara Marie should be "accessible to both parents" and that it would be "damaging for Sara to be with just one of her parents." Consequently, Anderson recommended that

> [s]hared Custody of Sara Ensrud be granted to her parents . . . with her physical possession changing on the last Saturday of each month commencing on [January 30, 1988]. It should be understood that this arrangement may require change when Sara enrolls in school or if the permanent residence of either parent prohibits monthly travel.

Alicia Ensrud testified that her employment did not provide income sufficient to defray the cost of travel from Rapid City to Kearney, a drive consuming at least 8 hours, for shared custody on the alternate monthly basis recommended by Anderson.

Dr. Jerry Denton, a clinical psychologist, also testified for David Ensrud. Although Alicia's living in Rapid City had prevented her interview by Dr. Denton, Sara Marie and David visited with Dr. Denton, who found a sound relationship, a "deep bonding relationship," between the daughter and father. Dr. Denton characterized David as a "nurturing parent," which includes "a certain amount of other-ness in terms of center-ness." (We assume the foregoing and unclarified characterization means that David was not self-centered and was unselfish with respect to Sara Marie and that *otherness*

does not mean "the quality or state of being different." Webster's Third New International Dictionary, Unabridged 1598 (1981).) Because he had not interviewed Alicia, Dr. Denton recommended that custody of Sara Marie be shared equally by Alicia and David, or, as explained by Dr. Denton:

> Because I had not seen the mother, I felt that any kind of decision that would be an unequal kind of sharing, knowing that what I knew about Dave would be unfair to the mother. So my recommendation stopped with the 50/50 sharing. I was not willing to go beyond that. Had I interviewed the mother and seen her and questioned her and also had her demonstrate the nurturing might be there, might not be there, my recommendation might have been different. My recommendation in this case be [sic] shared custody. I think that this daughter needs both her mother's love which I assume to be every bit as deep and meaningful as her father's love. And my recommendation in no way is intended to penalize either parent but rather to have both parents remain significant others in her life.

Having taken the case under advisement, the court later entered a "Decree of Dissolution," which contained a division and distribution of property (action about which neither party complains) and provisions concerning child custody and support for Sara Marie, namely:

> IT IS FURTHER ORDERED that custody of the minor child is retained by the Court with physical possession of the child to be shared equally between the parents as provided from time to time by the District Court Child Custody Officer and until further Order.

> IT IS FURTHER ORDERED that the Petitioner will maintain the current medical insurance on the minor child until further Order and that each of the parents will share the cost of transportation to change possession of the child between the parents. The change of possession shall be as mutually agreed by the parties and approved by the Custody Officer or in the absence of agreement by the parties and approval by the Custody Officer, as the Custody Officer may from time to time direct. Each of the parties [is] to assume the expense and cost of care of the

child while the child is in each party's possession and no child support is ordered at this time.

Alicia contends that the court erred in retaining legal custody of Sara Marie, in authorizing the child custody officer to determine the schedule of visitation and "physical possession" of the child, in not granting Alicia the legal and physical custody of Sara Marie, and in failing to order child support payable to Alicia for Sara Marie. In his cross-appeal, David claims the court erred by failure to grant Sara Marie's custody to David.

In an appeal involving actions for dissolution of marriage, the Supreme Court's review of a trial court's judgment is de novo on the record to determine whether there has been an abuse of discretion by the trial judge, whose judgment will be upheld in the absence of an abuse of discretion. In such de novo review, when the evidence is in conflict, the Supreme Court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Christen v. Christen*, 228 Neb. 268, 422 N.W.2d 92 (1988).

Neb. Rev. Stat. § 42-364 (Reissue 1988) in pertinent part provides:

When dissolution of a marriage or legal separation is decreed, the court may include such orders in relation to any minor children and their maintenance as shall be justified, including placing the minor children in the custody of the court or third parties . . . . Custody and visitation of minor children shall be determined on the basis of their best interests.

In a dissolution proceeding, custody of a minor child is determined by the child's best interests and due regard for the superior right of a parent fit to have custody of the child. *Nielsen v. Nielsen*, 207 Neb. 141, 296 N.W.2d 483 (1980).

Pursuant to § 42-364, a district court may obtain and retain legal custody of a minor child, in proceedings to dissolve a marriage, and grant a parent physical custody of the child. *Christen v. Christen, supra.*

In *Bartlett v. Bartlett*, 193 Neb. 76, 78-79, 225 N.W.2d 413, 415-16 (1975), we stated:

Section 42-364, R.R.S. 1943, authorizes the court to place the custody of minor children in the court, to determine custody on the basis of the best interests of the children, and to make subsequent changes when required. When the best interests of the children, in regard to custody, is not clear, the court may, and should, place custody in the court. In regard to such disposition we have stated that: "Its purpose is to 'facilitate judicial supervision and summary power to act swiftly in their (the childrens' [sic]) best interests.' . . . The parent having possession where the court has retained custody is in effect an agent of the court." Benson v. Benson, 190 Neb. 87, 206 N.W.2d 51 [1973].

It is evident that when a court finds it necessary to place custody of minor children in the court, it does so because it is doubtful that it is cognizant of the full story relating to the best interests of the children and of the propriety of awarding custody to one of the parties. Such an order is ordinarily temporary and probationary in nature and reserves in the court the power to make further summary disposition of minor children when it becomes apparent that their best interests require it. There has not been a final determination of fitness in regard to either party. That question remains open and subject to determination after further notice and hearing.
See, also, *Clark v. Clark*, 228 Neb. 440, 422 N.W.2d 793 (1988); *Grindle v. Grindle*, 226 Neb. 807, 415 N.W.2d 150 (1987); *Peterson v. Peterson*, 224 Neb. 557, 399 N.W.2d 792 (1987).

Our review of the record, which reflects the extant situation at the time of trial, does not disclose anything which then disqualified Alicia or David as a parent fit to have custody of Sara Marie. As indicated in *Christen v. Christen, supra*, and *Bartlett v. Bartlett, supra,* if a parent is fit to have custody of a child involved in a dissolution proceeding, a court's acquired and retained legal custody of such child should be a rare disposition warranted only in the extraordinary situation where the court lacks adequate information concerning the best interests of the child in relation to the custody question.

A judicial abuse of discretion does not denote or imply

improper motive, bad faith, or intentional wrong by a judge, but requires the reasons or rulings of a trial judge to be clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition through a judicial system.

*Bump v. Firemens Ins. Co.*, 221 Neb. 678, 689, 380 N.W.2d 268, 276 (1986). See, also, *Newton v. Brown*, 222 Neb. 605, 386 N.W.2d 424 (1986).

We find that the record contains information sufficient to determine whether Alicia or David should have legal custody of Sara Marie. We do not believe that the circumstances warranted a district court's acquisition and retention of Sara Marie's legal custody. The district court's acquisition and retention of legal custody, under the circumstances, constituted a judicial abuse of discretion inasmuch as an ostensibly fit parent's right to legal custody was disregarded in the proceedings. Consequently, the district court's order of judicially acquired and retained legal custody is reversed. Because almost a year has elapsed since the dissolution trial in this case, Sara Marie's best interests require a remand of the proceedings for a current consideration and determination of the custody question and matters related to custody, such as child support and visitation. Further, temporary custody of Sara Marie is granted to Alicia Ann Ensrud, pending a hearing in the district court to determine who shall have custody of Sara Marie. Therefore, on remand, the district court shall enter its order granting Alicia Ann Ensrud the temporary legal and physical custody of Sara Marie Ensrud, in conformity with our decision and opinion issued today in this case.

In view of the remand to the district court, we are obliged to make still further comment in view of the custodial question which was previously presented to the district court and will be presented again to the district court.

Regarding shared or joint custody, § 42-364(3) provides:

The court may place the custody of a child with both parents on a shared or joint-custody basis when both parents agree to such an arrangement. In that event, the parents shall have equal rights to make decisions in the best interests of the child in their custody. The court shall not place a child in joint custody without conducting a

hearing in open court and specifically finding that joint custody is in the best interest of the child regardless of any parental agreement or consent.

This court has frequently and consistently expressed disapproval of joint custody as a purported solution for the difficulty confronted by a court in determining a question concerning child custody.

In *Wilson v. Wilson*, 224 Neb. 589, 590-91, 399 N.W.2d 802, 803-04 (1987), we stated:

We have, in our previous opinions on the issue of joint custody, stated explicitly that joint custody is not favored and must be reserved for only the rarest of cases. [Citations omitted.] Although each parent has shown only love and affection for the children, our review of the record makes apparent that the Wilsons' inability to agree on custody arrangements has disrupted the children's home life and caused much unneeded stress. Although each parent is capable of providing a secure and happy home for the children, it is in the best interests of the children that there be only one custodial parent.

As expressed in *Korf v. Korf*, 221 Neb. 484, 486, 378 N.W.2d 173, 174-75 (1985):

An award of joint custody of minor children is not favored. Such an award must be reserved for the most rare of cases. [Citation omitted.]

In citing this rule with approval, we are not unmindful of Neb. Rev. Stat. § 42-364(3) (Supp. 1985), which *permits* shared or joint custody only when both parents agree to such arrangements. We hasten to point out that the Legislature has provided that even in those cases where parental agreement or consent exists, the court must still conduct a public hearing on that issue. It must then find that joint custody is in the best interests of the child, *regardless* of agreement or consent by the parents. This is not one of the rare cases where the best interests of the child would be served by shared custody.

(Emphasis in original.)

In a similar vein, this court, in *Trimble v. Trimble*, 218 Neb. 118, 120, 352 N.W.2d 599, 601 (1984), commented:

> We believe, however, that [joint custody] must be reserved for the most rare of cases, i.e., where in the judgment of the trial court the parents are of such maturity that the arrangement will not operate to allow the child to manipulate the parents or confuse the child's sense of direction.

As the court observed in *Moninger v. Moninger*, 202 Neb. 494, 498-99, 276 N.W.2d 100, 103 (1979):

> In the instant case the court determined both parties were fit parents and that custody of the minor children should be alternated between the petitioner and respondent for various periods of time. . . . One of the primary objectives after the dissolution of a marriage where young children are involved is to create a stable atmosphere for the children to adjust. We are not prepared to say that this type of alternating custody is never suitable. There may be instances where the parties themselves agree that it would be in the best interests of the children. However, where there has been such turmoil and such a strenuous tug of war for custody of the children, we feel that it would not be in their best interests. We feel the trial court should hold a hearing as soon as possible to determine in whose custody the children should be placed.

For additional cases illustrating this court's disapproval of joint custody arrangements, see, *Mettenbrink v. Mettenbrink*, 220 Neb. 650, 371 N.W.2d 310 (1985), and *Krueger v. Krueger*, 211 Neb. 568, 319 N.W.2d 445 (1982). Further analysis and discussion of the pitfalls and shortcomings inherent in joint child custody are found in an extensive article by Singer & Reynolds, *A Dissent on Joint Custody*, 47 Md. L. Rev. 497 (1988).

As approved by the district court in this case, the shared or joint physical custody relates to the right and duty of Alicia and David to provide a home for Sara Marie and make the daily child-rearing decisions required when Sara Marie resides with the particular parent exercising custody. Such a situation necessarily involves Alicia's and David's equally sharing custodial responsibilities regarding physical care and time with respect to Sara Marie. We will not reiterate our concern that

joint custody may likely produce detrimental shuttling of a child from one parental residence to another and a lack of stability or continuity in a child's environment as the result of the child's becoming, as it were, a bird batted back and forth in a custodial badminton match. We need not express additional concern, arising from the distance and expense inextricably involved in the alternate periods of custody in Ensruds' case. We need not further descriptively detail our concerns relative to joint physical custody in the present case because the requirements for joint custody under § 42-364(3) have not been satisfied. Parental agreement is a prerequisite for joint custody pursuant to § 42-364(3). The record does not contain any agreement between Alicia and David, stating or otherwise indicating that Sara Marie's custody shall be shared or joint. Quite to the contrary, the attempts by Alicia and David to achieve a pretrial joint custody arrangement can only be characterized as temporary truces in continuing combat for custody of Sara Marie. Also, under § 42-364(3), the trial court must specifically find that joint custody is in the best interests of the child regardless of parental agreement or consent for joint custody. The record does not contain an express finding by the district court that joint custody was in the best interests of Sara Marie. Hence, any order by the district court relative to joint custody in Ensruds' case is an abuse of discretion as the result of noncompliance with the requirements prescribed in § 42-364(3) and is, therefore, reversed.

Although we have somewhat restricted our comments about shared or joint custody, other aspects of the present proceedings are truly troubling, namely, the manner in which the child custody officer is involved in this case and the authority exercised and exercisable by that child custody officer. According to the dissolution decree, physical custody was exercisable as directed by the child custody officer. Subject to the child custody officer's approval, modification of custody provisions could be accomplished by agreement of the parties or, in the absence of the parties' agreement, modification of custody could be achieved "as the Custody Officer may from time to time direct." Conspicuously absent from any modification or alteration of joint custody or "change of

possession" is the district court, which has the duty to determine the best interests of a child involved in a dissolution proceedings, including the child's best interests in reference to custody. As directed by § 42-364 concerning dissolution proceedings, "Custody and visitation of minor children shall be determined on the basis of their best interests." Specifically, in reference to joint custody, "The court shall not place a child in joint custody without conducting a hearing in open court and specifically finding that joint custody is in the best interest of the child . . . ." § 42-364(3). Determination of best interests is a judicial duty and function, not the responsibility of administrative staff assisting a court in dissolution proceedings.

Recently, in *Drennen v. Drennen*, 229 Neb. 204, 426 N.W.2d 252 (1988), this court held that a statute, which gave authority to a child support referee to establish, modify, enforce, and collect child and spousal support, unconstitutionally denied to persons who were chargeable with potential or delinquent child support obligations access to the district court as a trier of fact concerning claims for child or spousal support. See Neb. Const. art. I, § 13 (access to courts).

While the present case does not involve a legislative attempt to confer judicial authority on a grantee outside the judiciary, contrary to the Nebraska Constitution, nevertheless, judicially authorizing a child custody officer to control custody of Sara Marie and, correspondingly, the visitation rights of Alicia and David, is a delegation of judicial authority unauthorized in Nebraska law.

In *Deacon v. Deacon*, 207 Neb. 193, 297 N.W.2d 757 (1980), this court considered and reversed a "trial court's order placing in a psychologist the authority to effectively determine visitation, and to control the extent and time of such visitation." *Id.* at 200, 297 N.W.2d at 762. In disapproving the judicially conferred authority for the psychologist's determination of visitation rights, this court stated:

> Such delegation could result in the denial of proper visitation rights of the noncustodial parent.
>
> . . . The responsibility of the trial court to determine questions of custody and visitation of minor children according to their best interests is an independent

responsibility and cannot be controlled by the agreement or stipulation of the parties. [Citation omitted.]

*Id.* at 200-01, 297 N.W.2d at 762.

As this court observed in *Lautenschlager v. Lautenschlager*, 201 Neb. 741, 743-44, 272 N.W.2d 40, 42 (1978):

The rule that custody and visitation of minor children shall be determined on the basis of their best interests, long established in case law and now specified by statute, clearly envisions an independent inquiry by the court. The duty to exercise this responsibility cannot be superseded or forestalled by any agreements or stipulations by the parties.

A decision concerning physical custody of Sara Marie, which necessarily involves ascertaining the best interests of the child, is a matter for constitutionally authorized judicial determination. Such judicial authority cannot and shall not be delegated to administrative personnel, who assist a court charged with the responsibility of determining the best interests of a child involved in a dissolution proceeding. While we have set aside the district court's judgment concerning legal custody retained by the court, which ordinarily would dispose of the custody question in the present case, we are, nevertheless, compelled to express disapproval of the attempted delegation of judicial authority.

The district court's judgment pertaining to a division and distribution of marital property is affirmed. Our disposition of Alicia's appeal eliminates the necessity to resolve David's cross-appeal.

However, having reversed the district court's judgment regarding custody of Sara Marie, we remand these proceedings to the district court with direction that the district court, after immediate entry of the order granting Alicia Ann Ensrud the temporary custody of Sara Marie Ensrud, shall, as soon as practicable, hold a hearing to determine the question of child custody and related matters in the best interests of Sara Marie Ensrud.

REVERSED AND REMANDED WITH DIRECTION.