Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/04/2019 08:08 AM CDT

Anne E. VanSkiver, appellee, v.
Todd J. VanSkiver, appellant.
___ N.W.2d ___

Filed July 12, 2019.    No. S-18-852.

1. **Modification of Decree: Appeal and Error.** Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court.
2. **Modification of Decree: Visitation.** Visitation rights established by a marital dissolution decree may be modified upon a showing of a material change of circumstances affecting the best interests of the children.
3. **Modification of Decree: Words and Phrases.** A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently.
4. **Modification of Decree: Visitation: Proof.** The party seeking to modify visitation has the burden to show a material change in circumstances affecting the best interests of the child.
5. **Modification of Decree: Visitation.** The best interests of the children are primary and paramount considerations in determining and modifying visitation rights.
6. **Courts: Child Custody: Visitation.** Under Nebraska law, the court is responsible for developing and approving a parenting plan, and it has a nondelegable duty to determine questions of custody and parenting time of minor children according to their best interests. The authority to determine custody and visitation cannot be delegated to a third party, because it is a judicial function.

Appeal from the District Court for Adams County: Stephen R. Illingworth, Judge. Affirmed as modified.

Mitchell C. Stehlik, of Stehlik Law Firm, P.C., L.L.O., for appellant.

Lucinda Cordes Glen for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Stacy, J.

The marriage of Anne E. VanSkiver and Todd J. VanSkiver was dissolved in April 2015. Anne was granted legal and physical custody of the parties' two minor children, subject to a parenting plan agreed to by the parties and approved by the court. In July 2017, Anne moved to modify and suspend Todd's parenting time pending family therapy, alleging that his erratic and threatening behavior had escalated and that the children were frightened of him. The district court did not order family therapy, but did modify the parenting plan. Todd filed this timely appeal. We affirm as modified.

## FACTS

Anne and Todd married in 2000, and in October 2009, she filed a complaint to dissolve the marriage. After years of contentious litigation, the parties reached a settlement agreement and the marriage was dissolved in April 2015. Anne was awarded legal and physical custody of the parties' two minor children, and Todd was awarded parenting time pursuant to an agreed-upon parenting plan. Under the plan, Todd had parenting time every Monday and Wednesday evening from 5:30 to 7:30 and the second weekend of every month from 5:30 p.m. on Friday until 5:30 p.m. on Sunday. The plan also set forth a rotating holiday parenting time schedule.

In July 2017, Anne sought to modify Todd's parenting time, asking that it be suspended pending family therapy. She alleged that since the entry of the decree, Todd had "become increasingly angry, threatening, harassing, and erratic" to her,

the children, and others. She alleged that she had obtained a protection order against Todd due to this new behavior, that he had violated the protection order, and that the children "fear[ed] for their safety" when they were with Todd. She asked that Todd's parenting time be modified in an appropriate manner and suspended until the children were comfortable with him after family therapy. Todd's answer denied Anne's allegations and alleged that no material change in circumstances had occurred.

Trial on the complaint to modify was held May 2, 2018. Anne testified that she obtained a protection order against Todd on May 25, 2017, based on threats he made to her, such as "tic toc . . . time is running out," "[w]atch out from being alone in the dark," and "[t]he sands of time are closing in." She testified she understood these statements to be threats that Todd was going to harm or kill her. Anne further testified that Todd violated this protection order in June 2017 by sending similar text messages, including some alluding to digging her grave.

The protection order was still in effect at the time of trial, and thus Todd was precluded from having contact with Anne. Because of this, Todd had been contacting the older child, who was born in 2002 and was 15 at the time of trial, to arrange parenting time. Anne testified that Todd often had dinner with the children two nights a week, but that he had not exercised his weekend parenting time for approximately 1 year (since May 2017). Anne said the children had expressed concerns to her about spending time with Todd. She testified that Todd had "become more frightening" since the time of the divorce, and she asked that his parenting time be modified to occur only "when the kids wanted to see [him]."

On cross-examination, Anne testified that Todd made daily threats to her during the marriage. She admitted being frightened of him prior to the divorce. On redirect, she explained that since the divorce, Todd's "whole demeanor" had changed,

in addition to the "way he is with the kids." She testified that the children were now "scared of him," had realized "that he's crazy," and were "afraid."

A licensed independent mental health practitioner testified that he had provided counseling services for both children during the fall and winter of 2017 and for the younger child in April 2018. The practitioner testified that the relationship between the younger child and Todd was "strained" and "poorly-formed." He did not think the relationship was improving. The practitioner admitted he had never met Todd.

At the time of trial, Todd was on probation for violating the protection order Anne obtained against him and his probation was subject to various conditions. Todd's probation officer testified that a motion to revoke probation was pending because Todd had failed to comply with certain conditions, including completion of a 36-week education class and not possessing firearms. The record indicates Todd was dismissed from the education class due to disruptive behavior and noncompliance with course rules. The probation officer noted that revocation proceedings remained pending and that Todd had denied the allegations of the motion to revoke.

The older child's school counselor testified that she began seeing him weekly at the beginning of the 2017-18 school year. Some weeks she sees him more than once, because the child seeks her out for additional counseling if he is having a difficult day. The counselor testified that she works with the child to help him destress and cope with his anxiety so that he can focus on his schoolwork. She testified the child often has stomach aches due to his anxiety and sometimes needs to go home from school. The counselor testified that one source of the child's stress and anxiety was contact with his father. The counselor had viewed some text correspondence between the child and Todd and opined that Todd's messages were inappropriate. She also opined that the child felt a responsibility to shelter and protect the younger child from his father. The

counselor had discussed these issues with Anne, but had never met Todd.

The older child testified in chambers. The parties' lawyers were present, but the parents were not. He was 15 years old at the time of trial and a high school freshman. His younger brother was 11 years old. He stated that his preference would be that he would like "little to no time" with his father, except maybe on holidays and Christmas. He thought that less contact with his father would be a big stress relief for him. He testified he was worried about his younger brother's safety, because he thought his father could possibly hurt him. The child explained that Todd is "unpredictable" and that he never knew when Todd was "going to outburst and into rage." He testified he was afraid of his father, and he thought his brother was afraid too. He asked that any parenting time with his father be limited to when the children wanted to see him. The child was unsure whether joint counseling with his father would help, because he did not think his father would be open to it. He stated he does not really bring up issues to his father, because his father "brush[es] them off." He testified he was fearful that his father and grandmother might attempt to kidnap him as some sort of "vendetta."

The child testified that on one occasion when his father picked them up for a visit, there was a gun in the back seat of the car, next to where his younger brother was riding. He also described an incident where his father got angry with his younger brother and grabbed the child's face during a card game, but otherwise testified Todd had never physically struck either of them. He stated his father often called him names, such as "mother fucker," "master baitor," "wiener," "wanger," and "wise ass." He stated the name calling made him feel "[e]motionally drained." He testified the relationship with his father was causing him stress. However, the child said he did not mind being the go-between to set up visits with his father.

Todd testified that he did not believe any change in the parenting plan was warranted. He stated that communicating with the older child directly to set up visitation times was generally working. He denied ever calling the older child names, even in a joking manner. He also denied ever having a gun in the vehicle when he picked up the boys. Todd's mother testified that she had never heard him call the boys names or threaten them.

On August 17, 2018, the district court entered an order modifying the parenting time. The order made specific factual findings, including the following:

> [T]he Court observed the conduct and demeanor of [Anne] and [Todd] during the modification hearing. [Anne] is clearly afraid of [Todd]. She is distressed to be in the same room with him. As to [Todd], he has total disrespect for [Anne], the Court and anyone in a position of authority. During [Anne's] testimony the Court observed his mocking behavior, laughing during testimony and general contemptuous attitude. . . .
>
> . . . .
>
> The Court has consistently forced children to go on visitations with non custodial parents when they did not want to go and the children were not at risk for mental or physical harm. This case is different. These children have been and are at risk for mental abuse from their father. [Todd] has consistently shown signs of extreme anger, contempt for authority, a total disregard of the rules functioning citizens are required to live by and a pattern of threats and intimidation to his children and former wife. . . . The Court will therefore enter an order to allow the boys to see their father at their discretion. Hopefully [Todd] will seek mental health counseling to help him repair his relationship with his boys.

The court's order then provided:

> 1. There has been a material change in circumstances warranting a modification of [Todd's] parenting time.

Paragraph V, time sharing on page 3 of the parenting plan is modified as follows:

The Father shall have parenting time as follows:

A. Monday and Wednesday evenings of each week from 5:30 P.M. to 7:30 P.M. The boys may decline to go on these visits if [Todd] acts in a threatening manner.

B. Holidays and special days - the boys shall decide if they wish to see their father on the holidays and special days set out in the parenting plan.

2. There will be no overnight visitations until [Todd] engages in individual mental health counseling and then counseling with the boys. He may then petition the Court for additional parenting time.

Todd filed this timely appeal, and we moved the case to our docket on our own motion.

## ASSIGNMENTS OF ERROR

Todd assigns that the district court abused its discretion in (1) determining a material change in circumstances had occurred since the entry of the decree, (2) delegating to the minor children the right to determine whether to exercise parenting time with Todd, and (3) limiting his parenting time.

## STANDARD OF REVIEW

[1] Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court.[1]

## ANALYSIS

### MATERIAL CHANGE IN CIRCUMSTANCES

[2-5] Visitation rights established by a marital dissolution decree may be modified upon a showing of a material change

---

[1] *Hopkins v. Hopkins*, 294 Neb. 417, 883 N.W.2d 363 (2016). See *Flores v. Flores-Guerrero*, 290 Neb. 248, 859 N.W.2d 578 (2015).

of circumstances affecting the best interests of the children.[2] A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently.[3] The party seeking to modify visitation has the burden to show a material change in circumstances affecting the best interests of the child.[4] The best interests of the children are primary and paramount considerations in determining and modifying visitation rights.[5]

Todd argues Anne failed to show a material change in circumstances that would support modifying his parenting time. Bluntly put, his contention is that Anne was afraid of him at the time of their divorce due to his threatening behavior, so the fact that she remains afraid of him due to his threatening behavior is nothing new. We do not find Todd's contention persuasive.

The evidence does show that Anne was afraid of Todd and felt threatened by his behaviors at the time of their divorce. But it also shows that Todd's behavior has escalated since that time, to the point where Anne had to obtain a protection order against him. Perhaps more important, regardless of the relationship between Todd and Anne, there is evidence that the circumstances of the relationship between Todd and the children has deteriorated. Anne testified Todd's behavior has escalated, his demeanor toward the children has changed, and the children are afraid of him. The older child confirmed he was afraid of his father, and there was evidence that child was experiencing significant stress as a result of his father's harmful behavior and mental abuse. On this record, we find Anne

---

[2] *Berndt v. Berndt*, 25 Neb. App. 272, 904 N.W.2d 24 (2017).

[3] *Id.*

[4] *Id.*

[5] *Id.*

has shown a material change in circumstances affecting the best interests of the children. Todd's first assignment of error is meritless.

### Modification of Parenting Time

[6] In his second assignment of error, Todd argues the district court erred in "delegating to the minor children the right to determine whether to exercise parenting time."[6] Under Nebraska law, the court is responsible for developing and approving a parenting plan.[7] Both this court[8] and the Court of Appeals[9] have held that a trial court has a nondelegable duty to determine questions of custody and parenting time of minor children according to their best interests. And we have emphasized that the authority to determine custody and visitation cannot be delegated to a third party, because it is a judicial function.[10]

Todd's argument that there has been an improper delegation of the court's authority to establish parenting time is premised on the assumption that when the court modified his parenting time, it retained the specific blocks of scheduled parenting time awarded previously, but authorized the children to decide, based on Todd's behavior, whether he could exercise that parenting time. This is a plausible interpretation of the court's language, but we are not convinced on de novo review that it is the proper one.

---

[6] Brief for appellant at 16.

[7] See Neb. Rev. Stat. § 43-2929 (Reissue 2016).

[8] See, *Ensrud v. Ensrud*, 230 Neb. 720, 433 N.W.2d 192 (1988); *Deacon v. Deacon*, 207 Neb. 193, 297 N.W.2d 757 (1980), *disapproved on other grounds, Gibilisco v. Gibilisco*, 263 Neb. 27, 637 N.W.2d 898 (2002).

[9] See, *Barth v. Barth*, 22 Neb. App. 241, 851 N.W.2d 104 (2014); *Mark J. v. Darla B.*, 21 Neb. App. 770, 842 N.W.2d 832 (2014); *In re Interest of Teela H.*, 3 Neb. App. 604, 529 N.W.2d 134 (1995).

[10] See *Ensrud, supra* note 8.

No Improper Delegation

We are guided by the court's expressed intentions. Before articulating the terms of the modified parenting plan, the court stated its intent was to "enter an order to allow the boys to see their father at their discretion." This does not suggest to us that the court intended to retain any enforceable parenting time with Todd. To the contrary, we understand the court as stating an intent to completely eliminate Todd's enforceable parenting time, while simultaneously acknowledging the practical reality that the boys may at times still wish to spend time with their father.

The remainder of the court's order is consistent with this intention. The order expressly eliminated Todd's overnight parenting time and provided that if Todd "engages in individual mental health counseling and then counseling with the boys . . . [h]e may then petition the Court for additional parenting time."

We acknowledge the court's order provided that the boys could "decide if they wish to see their father" on holidays and "may decline to go on" the Monday and Wednesday evening visits, but we do not understand this language as delegating to the children the judicial duty of establishing the parenting schedule. Instead, the order eliminated all of Todd's scheduled parenting time and recognized the reality that the boys, now ages 16 and 12, may want to spend time with their father despite the fact Todd has no enforceable parenting time schedule. Contrary to Todd's contention, the children were not given discretion to set the parenting time schedule, nor were they given authority to determine whether or when Todd could exercise parenting time.

Indeed, were we to adopt Todd's interpretation of the court's order, it would be inconsistent with the court's factual findings and difficult to enforce. The district court articulated genuine concern about Todd's escalating behavior and its negative effect on the children, which the court described as mental abuse, and

it would be inconsistent for the court to then award Todd specific parenting time contingent on the children's determination of whether Todd was acting in a threatening manner. Moreover, were we to construe the order of modification in this fashion, the only way to enforce it would be for Todd to bring a contempt action against his children, and we cannot imagine that was the court's intention.

Construed in context with the other provisions of the court's order of modification, we find the court developed a modified parenting plan designed to protect the children from Todd's harmful behavior by suspending all of his scheduled parenting time. We find this construction is not only supported by the record but is consistent with the court's stated intention in modifying the parenting plan. To the extent the language of the modification order could be read otherwise, we modify it on de novo review for the sake of clarity.

In doing so, we reject Todd's claim that the court has improperly delegated decisions about parenting time to the minor children. Instead, we clarify that the court has modified Todd's parenting time by suspending it entirely. Todd's second assignment of error is meritless.

## No Abuse of Discretion

In his final assignment of error, Todd argues the court abused its discretion in limiting his parenting time. Having clarified that the court actually suspended Todd's parenting time altogether, we find no abuse of discretion.

The record is replete with evidence that Todd's threatening behavior toward Anne and the children has escalated since the decree was entered and the original parenting plan was approved. The older child testified he is afraid of his father, and the court specifically found Todd's behavior amounted to mental abuse of the children. Evidence showed Todd violated the protection order Anne obtained against him and had been noncompliant with the terms of his probation, indicating an

unwillingness to acknowledge or change his behavior. As the court noted, the evidence established that "[Todd] has consistently shown signs of extreme anger, contempt for authority, a total disregard of the rules functioning citizens are required to live by and a pattern of threats and intimidation to his children and former wife."

On this record, we find no abuse of discretion in suspending Todd's scheduled parenting time.

## CONCLUSION

The order of modification was warranted by a material change in circumstances, and the court did not improperly delegate its authority to determine parenting time. Instead, as modified by this court for clarity, the district court's order suspended Todd's parenting time entirely. Because the record supports this modification, we affirm the order of the district court as modified.

AFFIRMED AS MODIFIED.